IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS, an Illinois Not-For-Profit Corporation, <br><br> and <br><br> AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS WELFARE BENEFIT PLAN, <br><br>              Plaintiffs, <br><br> v. <br><br> THE INVERNESS GROUP, INC., an Illinois Corporation, <br><br> and <br><br> JAMES M. BRODERICK, <br><br>              Defendants. | Case No.: 1:21-cv-1416 |

## COMPLAINT

NOW COMES Plaintiffs American Academy of Orthopaedic Surgeons (the "Academy") and American Academy of Orthopaedic Surgeons Welfare Benefit Plan (the "Plan") (collectively, "Plaintiffs"), by their attorney, Michael F. Tomasek of Tomasek Law Office, LLC, and for their Complaint against The Inverness Group, Inc. ("Inverness") and James M. Broderick ("Broderick") (collectively, "Defendants") allege the following:

### NATURE OF ACTION

1. This action seeks redress for Defendants' malpractice in incorrectly advising the Academy and the Plan as to the Patient Protection and Affordable Care Act (the "ACA") grandfathered status of the Plan. Defendants were responsible for advising the Academy and the

Plan on matters related to ACA compliance, including retention of the Plan's grandfathered status. During the course of a United States Department of Labor investigation, it became apparent that as of 2015, the Plan had lost its grandfathered status under the ACA because its monthly contribution percentage for employee coverage had fallen by more than five percent of the 2010 contribution percentage. As a result of the Defendants' faulty advice related to retention of the Plan's grandfathered status, the Plaintiffs have suffered damages consisting of corrective costs, attorney fees and staff costs.

## THE PARTIES

2. Plaintiff AAOS is an Illinois Not-For-Profit Corporation. Founded in 1933, the Academy is the preeminent provider of musculoskeletal education to orthopaedic surgeons and others in the world. Its continuing medical education activities include a world-renowned Annual Meeting, multiple continuing medical education courses held around the country and at the Orthopaedic Learning Center, and various medical and scientific publications and electronic media materials.

3. Plaintiff Plan is an employee benefit plan as that term is defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(3) and a welfare benefit plan as that term is defined under Section 3(1) of ERISA, 29 U.S.C. § 1002(1). It provides group health coverage and other welfare benefits to employees of the Academy, their spouses and dependents. As of the end of 2019, the plan covered 459 participants.

4. Defendant Inverness is an Illinois Corporation. According to generalliabililtyinsure.com, Inverness helps with a variety of insurance types that can include auto, home, life, disability, health, umbrella, boats, business insurance and others.

5. Defendant Broderick is the President, Secretary, and owner of Inverness. He acted as the health insurance broker and health insurance compliance advisor for the Academy and the Plan for at least 35 years. He performed these services through Inverness.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), with regard to the counts arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and this Court has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. § 1367 because such state law causes of action are so related to the claims arising under ERISA that they form part of the same case or controversy.

7. Venue is proper because a substantial part of the events or omissions giving rise to the claims herein alleged occurred in this judicial district.

8. Venue also lies in this Court under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## FACTUAL ALLEGATIONS

9. The Academy sponsors the Plan for the benefit of the participants and beneficiaries thereunder. The Plan is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(1), and an "employee welfare benefit plan" within the meaning of ERISA § 3(1), 29 U.S.C. § 1001.

10. Defendants served as the broker and compliance advisor for Plaintiffs from approximately 1985 until on or about October 1, 2019.

11. Section 715 of ERISA, 29 U.S.C. § 1185d, and the Regulations thereunder provide that as long as certain requirements are met, a group health plan such as the Plan will be exempt from many of the requirements the ACA imposes upon group health plans.

12. Among these requirements is the need to cover preventive care (as that term is defined under the ACA) at 100%--i.e., the ACA prevents a non-grandfathered plan from imposing any cost sharing, deductible or copayment requirement on any service that is deemed "preventive care" under the ACA.

13. Department of Labor Regulation Section 2590.715-1251(g)(1)(v)(A) provides that a plan's grandfathered status is lost if an employer's monthly contribution percentage for employee coverage falls by more than five percent of the contribution percentage in place during 2010.

14. In 2017, the United States Department of Labor (the "DOL") initiated an investigation of the Plan. On or around April 2, 2019, the DOL informed Plaintiffs that as of 2015, the Plan had lost its grandfathered status under the Affordable Care Act because its monthly contribution percentage for employee coverage had fallen by more than five percent of the 2010 employer contribution percentage.

15. As a consequence, Plaintiffs entered into negotiations with DOL that were intended to correct the problems resulting from the loss of grandfathered status.

16. Plaintiffs and the DOL ultimately entered into an arrangement under which DOL agreed to close its case in return for (i) a re-adjudication and payment of preventive care claims that the Plan covered at less than 100%, (ii) assurance that the Plan would defer to an attending medical provider for determination as to whether a medical claim is an urgent care claim, and (iii) revision of the Plan's SPD to provide that the internal claims and appeals process will be deemed exhausted if the Plan fails to adhere to all applicable claims procedure rules.

17. Plaintiffs paid participants $45,385.77 following a re-adjudication of preventive care claims that the Plan covered at less than 100% after its loss of grandfathered status, and Plaintiffs complied with the other items required by the arrangement with the DOL.

18. In addition to the payment of re-adjudicated claims, Plaintiffs incurred attorney fees and staff costs related to investigation and resolution of the relevant issues.

19. As the broker and advisor to the Plan, Defendants were responsible for Plan compliance, which included ensuring that the Plan retained its grandfathered status at all times.

20. Every year, Defendants would provide Plaintiffs with a range of acceptable employer contribution amounts that was intended to preserve the Plan's grandfathered status.

21. Defendants mistakenly believed that in order to preserve grandfathered status, an employer percentage reduction could not be more than five percent when compared to the immediately preceding year.

22. However, under the ACA, the proper year of comparison is 2010.

23. Because of their incorrect application of the ACA, Defendants repeatedly provided Plaintiffs with a range of contribution percentages that could cause the Plan to lose its grandfathered status.

24. Following Defendant's advice, Plaintiffs adopted employer contribution percentages that were within the ranges Defendants provided.

25. As a result, the Plan lost its grandfathered status.

26. Despite this, Defendants repeatedly advised the Plan that it remained grandfathered and advised Plaintiff administrative personnel to represent to Blue Cross Blue Shield of Illinois, the Plan's third party administrator, that the Plan retained its grandfathered status.

## COUNT I
## BREACH OF CONTRACT AGAINST BRODERICK

27. Plaintiffs re-allege and incorporate by reference paragraphs 1-26 as if fully set forth herein.

28. Plaintiffs and Defendant Broderick entered into a valid and enforceable contract for services.

29. Plaintiffs or one of them paid Broderick for all brokerage and advisory services performed in connection with the Plan during all relevant times.

30. Broderick breached the Agreement of the parties by providing deficient advisory services in his failure to properly advise the Plan regarding the Plan's grandfathered status.

31. But for Broderick's material breach of the service contract, Plaintiffs would not have incurred the corrective and other costs constituting damages in this action.

32. As a direct and proximate result of Broderick's breach of the service contract, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Broderick in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued in connection with this matter, any other damages recoverable under law, and any other and further relief as this Court deems just and equitable.

## COUNT II
## BREACH OF CONTRACT AGAINST INVERNESS

33. Plaintiffs re-allege and incorporate by reference paragraphs 1-32 as if fully set forth herein.

34. Plaintiffs and Defendant Inverness entered into a valid and enforceable contract for services.

35. Plaintiffs or one of them paid Inverness for all brokerage and advisory services performed in connection with the Plan during all relevant times.

36. Inverness breached the Agreement of the parties by providing deficient advisory services in its failure to properly advise the Plan regarding the Plan's grandfathered status.

37. But for Inverness' material breach of the service contract, the Academy and the Plan would not have incurred the corrective and other costs constituting damages in this action.

38. As a direct and proximate result of the Inverness breach of the service contract, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Inverness in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued in connection with this matter, any other damages recoverable under law, and any other and further relief as this Court deems just and equitable.

## COUNT III
## PROFESSIONAL NEGLIGENCE AGAINST BRODERICK

39. Plaintiffs re-allege and incorporate by reference paragraphs 1-38 as if fully set forth herein.

40. At all relevant times, Defendant Broderick provided brokerage and advisory services to employers, plans and others regarding matters related to group health plan compliance with the ACA and other laws. At all relevant times, Broderick was in the business of providing and analyzing information for the guidance of his clients in fulfilling their obligations to maintain grandfathered status under the ACA.

41. At the time Plaintiffs discovered that the Plan had lost its grandfathered status, and when the Plan had actually lost its grandfathered status, Broderick was responsible for advising Plaintiffs on matters related to that status.

42. Based upon the business relationship between the parties, Broderick owed a duty to Plaintiffs to provide competent advisory services.

43. Broderick was negligent in the performance of his advisory services by advising Plaintiffs that it was acceptable to reduce the employer contribution percentage by an amount that could destroy the Plan's grandfathered status.

44. With respect to his advisory services, Broderick was negligent in that he failed to use the ordinary skill, prudence and diligence that an advisor of ordinary skill and capacity commonly possesses and exercises in performance of the tasks that Broderick was obligated to perform on behalf of Plaintiffs.

45. But for the professional negligence of Broderick, the Plan would not have lost its grandfathered status.

46. As a direct and proximate cause of Broderick's professional negligence, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant Broderick in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued in connection with this matter, any other damages recoverable under law, and any other and further relief as this Court deems just and equitable.

## COUNT IV
## PROFESSIONAL NEGLIGENCE AGAINST INVERNESS

47. Plaintiffs re-allege and incorporate by reference paragraphs 1-46 as if fully set forth herein.

48. At all relevant times, Defendant Inverness provided brokerage and advisory services to employers, plans and others regarding matters related to group health plan compliance with the ACA and other laws. At all relevant times, Inverness was in the business of providing and analyzing information for the guidance of its clients in fulfilling their obligations to maintain grandfathered status under the ACA.

49. At the time Plaintiffs discovered that the Plan had lost its grandfathered status, and when the Plan had actually lost its grandfathered status, Inverness was responsible for advising Plaintiffs on matters related to that status.

50. Based upon the business relationship between the parties, Inverness owed a duty to Plaintiffs to provide competent advisory services.

51. Inverness was negligent in the performance of its advisory services by advising Plaintiffs that it was acceptable to reduce the employer contribution percentage by an amount that could destroy the Plan's grandfathered status.

52. With respect to its advisory services, Inverness was negligent in that it failed to use the ordinary skill, prudence and diligence that an advisor of ordinary skill and capacity commonly possesses and exercises in performance of the tasks that Inverness was obligated to perform on behalf of Plaintiffs.

53. But for the professional negligence of Inverness, the Plan would not have lost its grandfathered status.

54. As a direct and proximate cause of Inverness' professional negligence, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant Inverness in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued in connection with this matter, any other damages recoverable under law, and any other and further relief as this Court deems just and equitable.

## COUNT V
## ERISA BREACH OF FIDUCIARY DUTY AGAINST BRODERICK

55. Plaintiffs re-allege and incorporate by reference paragraphs 1-54 as if fully set forth herein.

56. Defendant Broderick provided compliance advisory services to employers, plans and others regarding matters related to group health plans such as the Plan. At all relevant times,

Defendant Broderick was in the business of providing and analyzing information for the guidance of his clients in fulfilling their obligations to maintain grandfathered status under the ACA.

57. At the time Plaintiffs discovered that the Plan had lost its grandfathered status, and when the Plan had actually lost its grandfathered status, Broderick was responsible for advising Plaintiffs on matters related to that status.

58. Plaintiffs are without expertise in the technical aspects of group health plan compliance with the ACA and other laws. Plaintiffs relied solely on Broderick's expertise to determine the appropriate employer contribution levels that would be necessary to retain the Plan's grandfathered status, giving Defendant Broderick special authority over the Plan's management by allowing him to determine these levels.

59. Broderick was a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that he exercised discretionary authority respecting management of the Plan and exercised authority respecting management of its assets.

60. As an ERISA fiduciary, Broderick was required to discharge his duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. See ERISA § 404, 29 U.S.C. § 1104.

61. Defendant Broderick breached his ERISA fiduciary duties by advising Plaintiffs that it was acceptable to reduce the employer contribution percentage by an amount that would result in a loss of the Plan's grandfathered status.

62. Broderick breached his ERISA fiduciary duties by failing to use the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such

matters would use in the performance of the tasks that he was obligated to perform on behalf of Plaintiffs.

63. But for the breach of fiduciary duty by Broderick, the Plan would not have lost its grandfathered status.

64. As a direct and proximate cause of Broderick's breach of fiduciary duty, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined.

65. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a civil action to be brought by a fiduciary for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. ERISA § 409(a), 29 U.S.C. § 1109(a), provides that anyone who breaches a fiduciary duty to a plan shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

66. The Plan suffered a loss when it had to pay preventive care benefits that it would not have otherwise had to pay had it retained its grandfathered status.

67. The Academy is a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and is entitled to relief from Defendant Broderick on behalf of the Plan.

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Find that Defendant Broderick has breached his ERISA fiduciary duties to the Plan.

    B.    Enter judgment in their favor and against Broderick for actual damages to the Plan in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued (to be awarded pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1)) in connection with this matter, and any other damages recoverable under law.

    C.    Award any other equitable relief as this Court deems just.

## COUNT VI
## ERISA BREACH OF FIDUCIARY DUTY AGAINST INVERNESS

68. Plaintiffs re-allege and incorporate by reference paragraphs 1-67 as if fully set forth herein.

69. Defendant Inverness provided compliance advisory services to employers, plans and others regarding matters related to group health plans such as the Plan. At all relevant times, Defendant Inverness was in the business of providing and analyzing information for the guidance of its clients in fulfilling their obligations to maintain grandfathered status under the ACA.

70. At the time Plaintiffs discovered that the Plan had lost its grandfathered status, and when the Plan had actually lost its grandfathered status, Inverness was responsible for advising Plaintiffs on matters related to that status.

71. Plaintiffs are without expertise in the technical aspects of group health plan compliance with the ACA and other laws. Plaintiffs relied solely on Inverness's expertise to determine the appropriate employer contribution levels that would be necessary to retain the Plan's grandfathered status, giving Defendant Inverness special authority over the Plan's management by allowing him to determine these levels.

72. Inverness was a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it exercised discretionary authority respecting management of the Plan and exercised authority respecting management of its assets.

73. As an ERISA fiduciary, Inverness was required to discharge its duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. See ERISA § 404, 29 U.S.C. 1104.

74. Defendant Inverness breached its ERISA fiduciary duties by advising Plaintiffs that it was acceptable to reduce the employer contribution percentage by an amount that would result in a loss of the Plan's grandfathered status.

75. Inverness breached its ERISA fiduciary duties by failing to use the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use in the performance of the tasks that it was obligated to perform on behalf of Plaintiffs.

76. But for the breach of fiduciary duty by Inverness, the Plan would not have lost its grandfathered status.

77. As a direct and proximate cause of Inverness's breach of fiduciary duty, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined.

78. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a civil action to be brought by a fiduciary for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. ERISA § 409(a), 29 U.S.C. § 1109(a), provides that anyone who breaches a fiduciary duty to a plan shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

79. The Plan suffered a loss when it had to pay preventive care benefits that it would not have otherwise had to pay had it retained its grandfathered status.

80. The Academy is a Plan fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and is entitled to relief from Defendant Inverness on behalf of the Plan.

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Find that Defendant Inverness has breached its ERISA fiduciary duties to the Plan.

B. Enter judgment in their favor and against Inverness for actual damages to the Plan in an amount to be determined at trial, together with costs, interest and attorneys' fees accrued (to be awarded pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1)) in connection with this matter, and any other damages recoverable under law.

C. Award any other equitable relief as this Court deems just.

## JURY DEMAND

Plaintiffs respectfully demand trial by jury on all issues so triable.

Respectfully submitted,

AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS

AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS WELFARE BENEFIT PLAN,

Plaintiffs


By: /s/ *Michael F. Tomasek*
One of Their Attorneys


Michael F. Tomasek
Tomasek Law Office, LLC
195 N. Front Street
Braidwood, IL 60408
(815) 390-5141

March 15, 2021

*Attorney for Plaintiffs*

*AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS*

*AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS WELFARE BENEFIT PLAN*

14